UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ROSEMARY MADLOCK**
4436 North 69th Street
Milwaukee, WI 53218,

    Plaintiff,

v.                                                                                              Case No.

**WEC ENERGY GROUP, INC.**
d/b/a We Energies
231 W. Michigan Street
Milwaukee, WI 53203,

    Defendant.

## COMPLAINT

The plaintiff, Rosemary Madlock, by her attorney, William R. Rettko, as and for a claim against the above named defendant, alleges and shows to the court as follows:

NATURE OF THE ACTION

Plaintiff brings this action to secure her civil rights to equal employment opportunities and to have the same terms, conditions and privileges of employment with the defendant as enjoyed by white employees and to seek redress for past and current violations of those rights together with seeking redress because of retaliation for opposing discriminatory employment practices, all in violation of 42 U.S.C. §1981 and the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201; and as authorized by 42 U.S.C. § 1981 and the Fourteenth Amendment of the United States Constitution.

## PARTIES

1. The plaintiff, Rosemary Madlock ("Madlock"), is an adult resident of the state of Wisconsin, is an African-American, and has been employed continuously by WE Energies since 1977.

2. The defendant, WEC Energy Group, Inc., doing business as WE Energies ("WE"), is a corporation, duly existing under the laws of the state of Wisconsin and regulated by the Public Service Commission of Wisconsin, maintaining its offices 231 W. Michigan Street, Milwaukee, Wisconsin, and who at all relevant times hereto was Madlock's employer.

## STATEMENT OF CLAIMS

3. Madlock has worked in WE's Customer Service Business Area since 1997, and assumed the position of Lead Customer Service Specialist on January 8, 2006 working in the area known as "meter-to-bill" (M2B) process, and more specifically with the Large Customer Billing Group.

4. In addition, Madlock is the union steward for Local 2150 IBEW and has been since approximately 1998 and is the only African-American as a head customer service specialist.

5. In or about August 2012, Madlock's supervisor ("Team Leader") for the Large Customer Billing Group was changed to Cathy Wrycza a white female.

6. Team Leader Wrycza was originally a customer consultant from the call center with no billing background, and as a result of inexperience in billing relied on Madlock to explain billing processes to her over and over again all of which caused Madlock to copy the emails she sent to Team Leader Wrycza explaining billing processes to the area's Manager Renee Rabiego-Tiller a white-female ("Manager Rabiego-Tiller").

7. Team Leader Wrycza developed an insecurity and felt intimidated by Madlock's knowledge and asked Cindy Mauch, "How do you deal with strong willed African American women?"

8. Team Leader Wrycza then went to Manager Rabiego-Tiller and complained that Madlock was preventing her from being an effective team leader and was committing excessive billing errors which resulted in a meeting with Madlock, Team Leader Wrycza and Manager Rabiego-Tiller at which meeting Madlock was told she needed to build a better working relationship with Team Leader Wrycza.

9. Team Leader Wrycza met with plaintiff, Tiara Joyner, and Shemieka Phillips at which time Wrycza told Joyner she would be taking over a large portion of plaintiff's job duties at which time Joyner began to cry, as she was not ready for such an assignment.

10. Team Leader Wrycza then met with Manager Rabiego-Tiller and told her that Madlock said something to upset Joyner and that Shemieka Phillips, another African American team leader in the Volume Billing Group, had threatened to quit as a result of these events.

11. At this time, almost all of Madlock's duties as a Lead Customer Service Specialist had been stripped from her and given to Tiara Joyner, a younger African-American female that Madlock was training.

3

12. One week later, in March 2013, Madlock was told by Manager Rabiego-Tiller that she was being transferred to the Volume Billing Group because of a billing error for a meter exchange that she processed in 2009.

13. The transfer to the Volume Billing Group did not cause a change in job title or a loss of pay for Madlock and placed her under the supervision of Team Leader Shemieka Phillips, but completely stripped her duties as a Lead Customer Service Billing Specialist which included large gas transportation billing, secondary billing for gas and electric, test billing, conducting audits, training other billers, responsibility for specific contracts and acting manager duties in the absence of the team leader during the interim of team leader turnover.

14. On April 11, 2013, Madlock filed an internal complaint with WE human resources alleging that Team Leader Wrycza had constantly harassed her by looking for faulty work that she completed, falsely accusing her of costing WE money, and removing her from her lead position in Industrial billing because she is an African-American.

15. After the investigation into Madlock's complaint had begun, Team Leader Phillips was instructed to write Madlock up for a billing error that had occurred in August 2012 when she was under Team Leader Wrycza's supervision although Phillips had no knowledge of industrial billing or how those accounts were billed.

16. Madlock through her union grieved this discipline on the timing of the discipline, and also claimed that the account had been billing on its own for two years prior to August 2012 based on equipment installed in 2010, but this grievance was ultimately lost in October 2013 as WE concluded that Madlock had completed the appropriate training to have discovered issues on the account even though such training was not completed until after her transfer to Volume Billing occurred as the industrial billing area does not have a trainer.

17. In December 2013, Madlock applied for the open Claims Analyst position, a position she had previously applied for in 2010 and was previously told she was qualified for, but a more senior person was given the position in 2010.

18. In December 2013, Madlock was told that she was not qualified for the Claims Analyst position due to the discipline she received for the August 2012 billing error and was labeled a poor worker.

19. Since at least 2010, there has been no other employee disciplined with a write up for a billing error although committing similar billing errors as Madlock was alleged in May 2013 to have made in August 2012.

20. In early 2014, Team Leader Wrycza disciplined a white male with a write up for unprofessional behavior, and had coached this employee for a billing error, but did not discipline him so that in March 2014, when he applied for promotion, he received it.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981

21. Reallege and incorporate herein by reference paragraphs 1 through 20 of this Complaint as if set forth at length herein.

22. WE allowed Team Leader Wrycza to use her position to discriminate against Madlock by constantly harassing her and looking for faulty work, and by then accusing her of errors while allowing similar like kind errors by non-African Americans to simply be coached, thereby allowing WE to strip Madlock's job duties and responsibilities from her, and in allowing her to be labeled as a problem employee, and to then transfer her to a position of greatly reduced job responsibilities to hinder her opportunity for advancement, thereby depriving Madlock full and equal benefit of all laws to enforce the terms and conditions of her employment with WE and to receive and enjoy all of the benefits and privileges of her contractual relationship.

23. WE's actions to support Team Leader Wyrcza's acts and recommendations allowed WE to strip Madlock's job duties and responsibilities from her allowing Madlock to be labeled as a problem employee, together with the transfer of Madlock to a position of greatly reduced job responsibilities have all resulted in a significant change in Madlock's employment which hinders her opportunity for advancement, and thereby deprives Madlock full and equal benefit of all laws to enforce the terms and conditions of her employment with WE and to receive and enjoy all of the benefits and privileges of her contractual relationship.

24. As a direct and proximate cause of WE's actions to deny Madlock, equal employment opportunity, they have caused Madlock to suffer compensatory damages, including, but not limited to, emotional distress and physical harm, loss of reputation, loss of back wages, loss of future wages, mental anguish, loss of reputation, attorney fees and other expenses as allowed by law.

25. WE's reckless indifferences of intentional discrimination against Madlock, and to intentionally fail to remedy or prevent equal employment opportunities for Madlock entitles her to punitive damages.

## SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981 BY RETALIATION

26. Reallege and incorporate herein by reference paragraphs 1 through 25 of this Complaint as if set forth at length herein.

27. WE retaliated against the protected activity of Madlock under 42 U.S.C. §1981 after she filed her internal complaint on April 11, 2013 by rendering unfair disciplinary write-ups on Madlock while allowing similar like kind errors by non-African Americans to simply be coached so as to remain outside of their permanent records, thereby allowing her to be labeled as a problem employee, all of which prevented Madlock opportunity for advancement, in addition

to depriving Madlock the full and equal benefit of all laws to enforce the terms and conditions of her employment with WE and to receive and enjoy all of the benefits and privileges of her contractual relationship together with the terms and conditions of her employment.

28. Had Madlock not engaged in the protected activity under §1981, WE would not have retaliated against her, as it was Madlock's internal complaint that was the substantial and motivating factor to discipline her with a write-up in May 2013 for an a billing error that had occurred in August 2012, and to use that discipline as the reason for denying her a promotion to the Claims Analyst position in December 2013.

29. As a result of the retaliation Madlock received from WE, she has suffered compensatory damages, including emotional distress and physical harm, loss of reputation, loss of past and future wages and benefits together with attorney fees as allowed by law.

30. WE's actions in retaliating against Madlock together with their deliberate and reckless indifference to Madlock's protected activity under §1981 entitles Madlock to punitive damages as assessed by a jury.

WHEREFORE, the plaintiff Rosemary Madlock, respectfully requests that this court:

A. Assume jurisdiction over this case;

B. Declare that the defendant's actions while acting under color of law adversely affected plaintiff's full and equal benefits of all laws of the United States of America to be free from discrimination due to her race in violation of 42 U.S.C. § 1981 and the Fourteenth Amendment;

C. Declare the defendant's actions while acting under color of law caused an unlawful employment practice against Madlock by their acts of retaliation for Madlock's protected activity under 42 U.S.C. §1981 and the Fourteenth Amendment;

D. Award compensatory damages including emotional distress and physical harm, loss of reputation, and loss of past and future wages and benefits against the defendant in an amount to be determined by a trier of fact for plaintiff;

E. Award punitive damages against the defendant in an amount to be determined by a trier of fact on the grounds the defendant's conduct complained of herein was done knowingly, willfully and in bad faith in violation of plaintiff's right to be free from discrimination based on her race;

F. Grant plaintiff her costs, disbursements and attorney fees in bringing this action; and

G. Grant such further relief as the court deems just and necessary.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Respectfully submitted this 17th day of March, 2016.

> s/William R. Rettko
> State Bar No. 1002608
> Counsel for Plaintiff
> RETTKO LAW OFFICES, S.C.
> 15460 W. Capitol Drive, Suite 150
> Brookfield, WI 53005
> Telephone: (262) 783-7200
> Facsimile: (262) 783-7202